## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

TWILA MORLEY                                                                      PLAINTIFF


v.                                       NO. 3:09CV00019 HDY


MICHAEL J. ASTRUE,                                                               DEFENDANT
Commissioner of the Social
Security Administration


<u>MEMORANDUM OPINION AND ORDER</u>


<u>BACKGROUND</u>.  The record reflects that in January of 2005, plaintiff Twila Morley

("Morley") filed applications for disability insurance benefits and supplemental security

income benefits pursuant to the provisions of the Social Security Act ("Act").  Her

applications were denied initially and upon reconsideration.  She next requested, and

received, a <u>de</u> <u>novo</u> administrative hearing before an Administrative Law Judge ("ALJ").

In March of 2008, Morley received an adverse decision from the ALJ.  Morley thereafter

appealed the adverse decision to the Appeals Council.  The adverse decision was

affirmed by the Appeals Council and thus became the final decision of the Commissioner

of the Social Security Administration ("Commissioner").  In February of 2009, Morley

commenced the proceeding at bar by filing a complaint pursuant to 42 U.S.C. 405(g).

In the complaint, she challenged the Commissioner's final decision.

STANDARD OF REVIEW.  The sole inquiry for the Court is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." See Id. at 1012.

THE COMMISSIONER'S FINDINGS.  The Commissioner made findings pursuant to the five step sequential evaluation process.  At step one, the Commissioner found that Morley has not engaged in substantial gainful activity since the alleged onset date.  At step two, the Commissioner found that Morley has the following severe impairments: "loss of vision in [her] left eye (Harada's syndrome) and asthma." See Transcript at 10. At step three, the Commissioner found that Morley does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the regulations.  The Commissioner then assessed Morley's residual functional capacity and found that she can perform a "wide range of … light work activity, which involves lifting no more than twenty pounds at a time with frequent lifting or carrying objects weighing up to ten pounds" and that she is "further limited to jobs which [do] not require binocular vision." See Transcript at 15.  At step four, the Commissioner found that "[Morley's] medical conditions do not preclude a return [to] her past work as a waitress." See Transcript at 15.  Given the foregoing finding, the Commissioner concluded that Morley is not disabled within the meaning of the Act.

-2-

<u>MORLEY'S ASSERTIONS OF ERROR</u>.  Are the Commissioner's findings supported by substantial evidence on the record as a whole?  Morley thinks not and advances the following reasons why:

(1) The Commissioner should have found that Morley's headaches are a severe impairment.

(2) The Commissioner erred in finding that Morley can perform a wide range of light work because the Commissioner did not give full consideration to Morley's headaches and blurred vision.

(3) The Commissioner's hypothetical question was not properly phrased because it failed to include Morley's headaches and blurred vision.

(4) "More weight should have been placed on [Morley's] testimony."  <u>See</u> Document 10 at 13.

<u>STEP TWO</u>.  Morley maintains that she suffers from severe headaches.  She maintains that her headaches should have been given more thorough consideration and that the Commissioner should have found at step two that they are a severe impairment.

At step two, the Commissioner is obligated to identify the claimant's impairments and determine whether they are severe.  An impairment is severe if it has "more than a minimal effect on the claimant's ability to work."  <u>See</u> <u>Henderson v. Sullivan</u>, 930 F.2d 19, 21 (8th Cir. 1992) [internal quotation omitted].  The determination at step two is strictly a medical determination.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137 (1987).

At step two, the Commissioner did not reject Morley's assertion that she is experiencing headaches. The Commissioner instead found that there is little medical evidence to support Morley's assertion that her headaches are severe and, alternatively, that they are "controllable with medications." <u>See</u> Transcript at 13. Accordingly, the Commissioner found at step two that Morley's headaches are not severe.

Does substantial evidence on the record as a whole support the Commissioner's finding at step two that Morley's headaches are not severe? The Court thinks so. As the Court noted above, the determination at step two is strictly a medical determination. The Commissioner could properly find that there is little medical evidence to substantiate Morley's claim of severe headaches. For instance, a CT scan of her head was performed in March of 2002 and the results were normal. <u>See</u> Transcript at 319-320.

Alternatively, any error on the part of the Commissioner with regard to the proper characterization of Morley's headaches at step two is harmless. Once the sequential evaluation process proceeds past step two, as it did in this instance, the Commissioner must consider <u>all</u> of a claimant's impairments in assessing her residual functional capacity, even the impairments that are found not to be severe. <u>See</u> Social Security Ruling 96-8p. The Commissioner complied with Social Security Ruling 96-8p in this instance. Although the Commissioner found that Morley's headaches are not severe, the Commissioner nevertheless considered them in assessing Morley's residual functional capacity. <u>See</u> Transcript at 11, 13.

-4-

MORLEY'S RESIDUAL FUNCTIONAL CAPACITY.   Morley next maintains that her residual functional capacity was improperly assessed and offers two reasons why.  First, she maintains that full consideration was not given to her headaches and blurred vision. Second, she maintains that more weight should have been placed on her testimony, specifically, that her subjective complaints should have been more fully considered.

A claimant's residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations."  See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004).  The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses [the person's] ability to function in the workplace."  See Id. at 539.

I.  Headaches and blurred vision.  The record reflects that in assessing Morley's residual functional capacity, the Commissioner considered Morley's headaches and blurred vision.  With regard to Morley's headaches, the Commissioner specifically found the following:

> [Morley] said she has frequent migraine headaches and that the shortest period the headache lasts is a day and that sometimes her headaches last [one] week.  She also alleged that she has to go to her room in [a] dark place with [a] pillow over her head when she has a headache.  [She] said she takes Excedrin for her migraine headaches now, but in Iowa, she got shots for the headaches.  …  She also stated she had a cornea transplant in 2000 in her left eye and takes Prednisone Forte, steroid drops for her eyes.  She said they never did pinpoint what was triggering her headaches, but think it might be eating dairy products.
>
> …

> … [Morley] underwent a CT scan on March 29, 2002, for complaints of headaches which were noted as normal by Dr. Schultz, M.D. … Skull series and cervical spine series … were noted as normal. …
>
> …
>
> [Morley's] headaches have been shown to be controllable with medications. Her headaches may be related to sinusitis, loss of vision in one eye, or tension from economic problems, but are not shown to be so frequent or severe that they would preclude work activity, especially work activity at the wide range of light exertional level in jobs that do not require binocular vision.

See Transcript at 11, 13. With regard to Morley's blurred vision, the Commissioner found that Morley experiences some blurred vision but that "[t]here is no evidence that her vision cannot be corrected with glasses …" See Transcript at 13.

Does substantial evidence on the record as a whole support the Commissioner's findings as to the impact of Morley's headaches and blurred vision on her residual functional capacity? The Court thinks so as the findings are consistent with the evidence in the record.

With regard to Morley's headaches, which are at the heart of her disability claim, the Commissioner did not reject Morley's assertion that she is experiencing headaches. Instead, the Commissioner discounted their severity and otherwise found that they are "controllable by medications," see Transcript at 13, thus permitting Morley to perform work activity at "the wide range of light exertional level …," see Id. There is evidence in the record to support those findings.

With regard to the finding as to the severity of Morley's headaches, the Commissioner could properly find that there is little medical evidence to substantiate Morley's claim of severe headaches. As the Court noted above, a CT scan of her head was performed in March of 2002, and the results were normal. It is true that she suffers from Harada's disease/syndrome, which might cause her headaches, but there is nothing in the record to suggest that the disease/syndrome is the source of her headaches.

The Commissioner could also properly find that the non-medical evidence was equally unpersuasive. There is no evidence that a health care provider restricted Morley's work activities because of her headaches. There is no evidence that she receives regular treatment for her headaches or that she takes a prescribed regimen of medication for her headaches. In addition, the Commissioner could properly find that the limitations Morley testified to were more of a "self-imposed, voluntary" nature than the result of restrictions caused by her headaches. <u>See</u> Transcript at 11.

With regard to the finding that Morley's headaches are controllable by medications, the record reflects that she was seen by a medical professional in December of 2007. The notes from that visit include the following: "[Morley] visits the AHEC office today for ER f/u where she received imetrex for the first time that relieved her migraine." <u>See</u> Transcript at 479. Thus, the Commissioner could properly find that Morley's headaches are controllable by medication and not disabling. <u>See</u> <u>Brace v. Astrue</u>, 578 F.3d 882 (8th Cir. 2009) (impairment controlled by medication not disabling).

With regard to Morley's blurred vision, the Commissioner found that Morley experiences some blurred vision but that "[t]here is no evidence that her vision cannot be corrected with glasses …" See Transcript at 13. There is evidence in the record to support that finding. During her December of 2007 visit to the AHEC Family Practice Clinic, she reported having 20/100 vision in her right eye, see Transcript at 479, a representation that is consistent with the notes from her previous examinations. There is nothing to suggest that her 20/100 vision in her right eye cannot be corrected with eyeglasses or that eyeglasses would not correct the blurred vision she is experiencing.

II.   SUBJECTIVE COMPLAINTS.   The record reflects that in assessing Morley's residual functional capacity, the Commissioner also considered Morley's subjective complaints.[1]   The Commissioner found that they are not "borne out by the overall evidence and are found not be fully credible to the extent alleged." See Transcript at 16.   Does substantial evidence on the record as a whole support the Commissioner's finding as to the impact of Morley's complaints on her residual functional capacity?  The Court thinks so as the finding is consistent with the evidence in the record.

---

[1]

"It is the [Commissioner's] responsibility to determine a claimant's [residual functional capacity] based on all relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of [her] limitations.   [Citation omitted].   Before determining a claimant's [residual functional capacity], the [Commissioner] first must evaluate the claimant's credibility. In evaluating subjective complaints, the [Commissioner] must consider, in addition to objective medical evidence, any evidence relating to: a claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. See Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)."   See Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).   "The [Commissioner] is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."   See Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).

The record reflects that the Commissioner cited the relevant authority and engaged in a brief discussion of the <u>Polaski v. Heckler</u> factors.  Although the treatment of each factor was not extensive, the Court is satisfied that the treatment was adequate and is supported by substantial evidence on the record as a whole.  Specifically, the Commissioner made note of evidence in the record that related to each factor and why the evidence tended to lessen Morley's credibility as to her subjective complaints.

Given the foregoing, the Court finds that substantial evidence on the record as a whole supports the Commissioner's finding as to Morley's residual functional capacity.  Specifically, substantial evidence on the record as a whole supports the Commissioner's treatment of Morley's headaches, blurred vision, and subjective complaints.

<u>HYPOTHETICAL QUESTION</u>.  Morley last maintains that the Commissioner's hypothetical question was not properly phrased.  Morley maintains that the question was not properly phrased because it failed to include her headaches and blurred vision.

"[T]estimony from a vocational expert is substantial evidence [on the record as a whole] only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies."  <u>See</u> <u>McKinley v. Apfel</u>, 228 F.3d 860, 865 (8th Cir. 2000) [internal quotation omitted].  The question need not contain every impairment alleged by the claimant, <u>see</u> <u>Haggard v. Apfel</u>, 175 F.3d 591 (8th Cir. 1999), but it must include the impairments supported by substantial evidence on the record as a whole.  <u>See</u> <u>Goff v. Barnhart</u>, 421 F.3d 785 (8th Cir. 2005).

In addressing Morley's assertion, the Court notes that the testimony of a vocational expert is not required at step four. The testimony of a vocational expert is only required when "the burden shifts to the [Commissioner at step five] and the claimant has a non-exertional impairment." See Johnston v. Shalala, 42 F.3d 448, 452 (8th Cir. 1994). Because in this instance the Commissioner did not proceed past step four, the use of vocational expert testimony was unnecessary.

Notwithstanding the foregoing, the Court has reviewed the hypothetical question posed to the vocational expert. See Transcript at 506-507. The Court is satisfied that it was correctly phrased because it captured the concrete consequences of Morley's deficiencies. It is true that the question did not mention her headaches or blurred vision, but neither impairment is disabling to such a degree that it should have been included in the question. As the Court noted above, there is little evidence that her headaches are severe and, alternatively, they are capable of being controlled by medication. In addition, there is nothing to suggest that her 20/100 vision in her right eye cannot be corrected with eyeglasses or that eyeglasses would not correct the blurred vision she is experiencing.

CONCLUSION. Given the foregoing, the Court is satisfied that substantial evidence on the record as a whole supports the Commissioner's findings. Specifically, the Commissioner could properly find at step two that Morley's headaches are not severe; that in assessing Morley's residual functional capacity, the Commissioner properly

treated Morley's headaches, blurred vision, and subjective complaints; and that the hypothetical question, though unnecessary, was properly phrased. Accordingly, Morley's complaint is dismissed, and all requested relief is denied. Judgment will be entered for the Commissioner.

      IT IS SO ORDERED this    29    day of October, 2009.


_____

UNITED STATES MAGISTRATE JUDGE